## The Citizens Mutual Fire and Marine Insurance Company *vs.* Brittan and others.

Decree and execution for sale of mortgaged premises amended, by reducing the amount decreed to be due, by the amount of interest which had been paid on the mortgage, but not allowed. A further reduction by the amount of an alleged premium for an extension of the time of payment of the mortgage, disallowed, such money having been paid to the then holder of the mortgage, partly as compensation for inducing the complainants to purchase it, and partly as indemnity against the loss which he should sustain in the sale.

On order to show cause why final decree and execution thereon, for sale of mortgaged premises, should not be amended.

*Mr. J. Whitehead*, for defendant, Longley.

*Mr. E. W. Ward*, for complainants.

THE CHANCELLOR.

The defendant, Longley, owner of the mortgaged premises, applies to have the final decree and *fieri facias* thereon, for the sale of those premises, amended, by reducing the amount decreed by the former to be due to the complainants, and by the latter directed to be raised accordingly. The controversy between the parties is with regard to the interest which became due upon the mortgage in suit in this cause, on the 17th of September, 1870, the 17th of March, 1871, and the 17th of September in the last mentioned year. It is admitted that all of the interest due at the first mentioned date, has been paid, except $51.66, which it is claimed is still unpaid. The mortgaged premises were sold and conveyed by Hugh Holmes to Samuel B. Brittan, on the 17th of March, 1869, and the latter then, with his wife, gave to Holmes the mortgage in suit, for $5500 of the purchase money of the property. It was payable in one year from its date and bore interest at seven per cent. per annum, payable half yearly. On the 10th of September, 1870, Brittan conveyed the premises to Longley, subject to the mortgage. Holmes assigned the mortgage to the complainants on the 28th of November, 1871. Interest is credited upon it up to September 17th, 1870. The decree was taken for the full amount of the principal, with interest from the last mentioned date, and execution was issued accordingly. That the interest due March 17th, 1872, and on September 17th, of the same year, was paid to the complainants before suit was commenced, is admitted. The decree and execution will therefore be amended by reducing the amount decreed to be due and directed to be raised for the complainants, accordingly. Longley insists that all the interest in dispute was paid to Holmes, and that a note of one Samuel D. Stryker, dated August 8th, 1872, for $253.10, payable to the order of Brittan & Co. at three months, and by them endorsed to Holmes, who, he insists, agreed to receive it as payment of the interest on the mortgage up to September 17th, 1871, was given in settlement of the whole matter. The evidence of Holmes on the subject is, that he

received from Brittan on the 20th of January, 1871, the memorandum check of Brittan & Co., (Longley was not a member of that firm,) for $190.00, for the interest due on the 17th of September, 1870, the discrepancy between the amount of the check ($190) and the amount of the interest ($192.50,) being accounted for by a small indebtedness due from him to Brittan & Co., which was then allowed. Of this check the whole amount was paid, except $51.66. He further testifies, that on the 15th of May, 1872, Brittan gave him the note of Samuel D. Stryker, for $183.20, at five months, payable to the order of Brittan & Co., and by them endorsed, for the interest which was due on the preceding 17th of March, allowing, as in the transaction of the check, some small amount due from him to Brittan & Co.; and that on the 8th of August, 1872, Brittan gave him Stryker's note for $253.10, at three months, for the interest which was to become due on the 17th of September following, and the amount due on the check above mentioned. Neither of these notes has been paid, and the balance due on the check also remains unpaid. Holmes testifies, that on receiving the check and notes, he gave Brittan receipts for them, by which he agreed that they should be credited on the bond when paid. It is proper to remark, that by agreement between Holmes and the complainants, made on the assignment of the bond and mortgage by the former to the latter, he was to be entitled to the interest on the bond and mortgage up to the 1st of December, 1871, and the company was to hold that interest, when collected, in trust for him. Holmes credited on the bond the interest due on the 17th of September, 1870, but after that date, no interest was credited. The complainants gave receipts for the interest paid to them, that which was due on the 17th of March, 1872, and on the 17th of September following.

The weight of testimony is, that the claim for interest, as made by Mr. Holmes, is just. He is evidently mistaken in the details of the transaction; for when the first note was given, in May, 1872, all the back interest, which he claims is unpaid, had then accrued, and the note given in August,

1872, could not, of course, have been given in anticipation of any part of that interest. But, A. Angelo Brittan, who is the only witness sworn for Longley on this subject, does not swear that all the back interest claimed by Holmes, except that included in the note for $253.10, was paid, nor does he state what was the consideration of the first note. So, too, of the check. He says it was not given for interest, but he does not state for what it was given. It clearly appears from his testimony, that Longley furnished him with the money to pay all the interest now in dispute. And it also appears, by his own admission, that as to so much of it, at least, as was included in the note for $253.10, he retained the money and gave to Holmes, Stryker's note, instead of it. The first note was not due when the last was given. It appears to me that it could not have been difficult for Brittan to give the history of the first note and of the check. If he indeed paid all the interest in dispute, except that which is included in the note for $253.10, there seems to be no good reason why he should not have sworn to the fact. The receipts which Holmes swears he gave on receipt of the check and notes, would have been very important testimony in the case. Angelo Brittan testifies, the note for $253.10 was given in settlement of all the back interest, and that Holmes agreed to accept it in payment and to credit it on the bond, at once, accordingly. Holmes swears directly to the contrary, and alleges that the receipts he gave for the check and notes, would, if produced, confirm the truth of his statement. It is by no means probable that Holmes would have accepted, as payment of the interest due on the mortgage, the note of a person as to whose pecuniary ability he was not assured, and he testifies that when he took Stryker's notes for the interest, he knew nothing about Stryker. Besides he testifies that, though Brittan requested him to endorse the payment of interest for which the notes were given on the mortgage, he refused to do so, and gave Brittan separate receipts for the money, by which he agreed to endorse the payments, if the notes should be paid. That he gave such receipts is not ab-

solutely denied by Angelo Brittan, in his later testimony In his earlier testimony, when he was first sworn in this matter, Angelo says that Holmes may have given him receipts, and he may not ; that he does not remember whether Holmes gave him receipts for the interest for which the notes were given, or not. He admits that he was at all times in the habit of taking receipts, on paying interest on that mortgage.

The complainants were entitled to be allowed, in respect of interest accrued on the mortgage, between March 17th, 1870, and September 17th, 1871, the amount of the two notes. Although the interest due September 17th, 1870, was credited on the bond, yet the check for it was given and the credit endorsed after Longley became the owner of the property. He cannot, therefore, claim any equity in his favor from the fact of the endorsement.

But the counsel of Longley insists that at all events the latter is entitled to be allowed, as a payment on the mortgage, the sum of $250 paid by him to Holmes, and for which he gave the latter his note, dated November 20th, 1870. This claim is made under the supplement of April 12th, 1864, to the act against usury, which provides that in all cases of suits at law, or in equity, to enforce any note, bill, bond, mortgage, contract, covenant, conveyance, or assurance, which shall thereafter be made for the payment or delivery of any money, wares, merchandise, goods, or chattels, lent, and on which a higher rate of interest shall be received or taken than that allowed by the law of the place where the contract is to be performed, the amount or value actually lent, without interest or costs of suit, may be recovered, and no more ; and if any premium or illegal interest shall have been paid to the lender, the sum or sums so paid, shall be deducted from the amount that may be due as aforesaid, and recovery had for the balance only. It is insisted that the $250 received by Holmes from Longley, were a premium for the extension of the time for paying the mortgage. But the evidence shows that this money was paid to Holmes, partly as his compensation for inducing the complainants to take

the assignment of the bond and mortgage, and partly as his indemnity against the loss which he would sustain in the sale of the mortgage to them. The mortgage was past due. By an agreement made between Samuel B. Brittan and Holmes, when the mortgage was given, the former was to pay off the mortgage whenever Holmes should be called upon to pay a certain mortgage held by a Mrs. Condit on property which Samuel B. Brittan conveyed to Holmes, subject thereto as part of the consideration of the mortgaged premises, on the conveyance of those premises by Holmes to him. She had required Holmes to pay off that mortgage. He accordingly, then, called on Brittan for payment of the mortgage in this suit. The latter was unable to raise the money, and offered to give Holmes $250, if he would get some one to take the mortgage and hold it for (according to Holmes' testimony) two years. A. Angelo Brittan testifies (Samuel B. Brittan was not sworn) that " the $250 were given and accepted as a consideration for Holmes' placing the mortgage where it would not be called for for at least three years." He says : " Holmes said he would have to sustain a loss or sacrifice, giving me to understand that it was some sort of transaction in which he would have to sacrifice some money. In answer to my question, as to how much sacrifice would be involved, he replied, about $250. I proposed to give him Mr. Longley's note for $250, payable in three months, drawn to my firm's order, agreeing to endorse the same, and get it discounted, if he desired it; this to be given and accepted as a consideration for his placing the mortgage where it would not be called for for at least three years. Mr. Holmes accepted that proposal, then and there. The note · was not then executed. This conversation took place prior to the time the note was given. I wrote to Mr. Longley, and received the note in return, which I endorsed and passed to Mr. Holmes, in pursuance of the agreement just mentioned, the terms of which were reiterated on that occasion." It appears that, under this arrangement, Mr. Holmes, on the 28th of November, 1871, assigned the mortgage to the com-

plainants, in consideration of an amount of their capital stock equal to $5500, at the par value thereof; that he received a dividend of five per cent. on its par value, on this stock, in July, 1872, and that after the next dividend, which was of the like amount, and was declared in January, 1873, had been declared, he sold the stock, including that dividend, at less than its par value. Mr. Holmes did not receive the $250 in consideration of any extension of time, or of any forbearance. He gave no extension, and exercised no forbearance. He received that money for his compensation in disposing of the mortgage, and for the loss which it was contemplated he would sustain in so doing. It is not premium within the meaning of the statute, and Longley is not entitled to any deduction or allowance on account of it.

Under the circumstances, no costs should be given to either party.

It is understood that, in the submission of this matter on this motion, the complainants tender themselves ready to deliver up the check and notes, all of which are produced before me.